666 A.2d 867

Sharon Ann STARLEPER, et al.

v.

Sandra L. HAMILTON.

No. 983, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Oct. 31, 1995.

Russell R. Marks (Mackley, Gilbert, Marks & DiGirolamo, Chtd. on the brief), Hagerstown, for appellants.

Karen L. Smith (Barton & Williams, on the brief), Hagerstown, for appellee.

Argued before WILNER, C.J., SALMON, J., and PAUL E. ALPERT, Associate Judge of the Court of Appeals (retired), Specially Assigned.

WILNER, Chief Judge.

This case reaches us as an expedited appeal founded upon an agreed statement of the case. It presents the single issue of whether the Circuit Court for Washington County erred in refusing to impose a constructive trust on the proceeds of a life insurance policy. We believe that the court erred in its analysis of the law, and we shall therefore remand for further proceedings.

## THE FACTS

Gary Hamilton was once married to appellant, Sharon Starleper, by whom he had a son, Justin. In 1984, Gary and Sharon separated and entered into a separation agreement. At the time, Gary owned a life insurance policy issued by one of the State Farm insurance companies. Paragraph 10 of the separation agreement provided:

"Husband agrees to keep his current State Farm life insurance policy in effect to be used for the support, maintenance and education of the Child in the event of Husband's death. The said fund shall be administered by Wife, and, if Husband so desires, another party as trustee. Husband agrees to provide periodic proof of payment of premium to Wife.

To the extent that Husband shall fail to comply with the provisions of this Paragraph, his estate shall be charged with the obligations hereinabove assumed."

When the agreement was executed, and when the eventual divorce was granted, the policy listed Sharon as the primary beneficiary and Justin as a successor or contingent beneficiary.

Gary married Sandra Hamilton, appellee, in August, 1991. Sandra knew nothing about the insurance policy and never saw, or knew the contents of, the 1984 separation agreement. Unknown to Sharon (or apparently Justin), in September, 1991, Gary made Sandra the primary beneficiary of the State Farm policy, although he kept Justin as the successor or contingent beneficiary.

Gary and Sandra lived together, with Sandra's son from an earlier marriage, until shortly before Gary's death in April, 1994. Upon his death, Sandra was contacted by a State Farm agent and informed that she would be receiving the policy proceeds of $29,887. At the time, Justin was still a minor, 13 years old.

Sandra and her son had left the marital home shortly before Gary's death because Gary had begun using drugs, and, indeed, his addiction was a factor in his taking his own life. At the time she received the insurance proceeds, Sandra was living in the basement of her brother's home. She initially invested the proceeds in a certificate of deposit but, on July 1, 1994, she contracted to purchase a home. Settlement occurred on August 12, 1994.

One day before settlement, Sandra received a letter from Sharon's attorney, informing her, for the first time, of a claim by Justin to the insurance proceeds. Notwithstanding that letter, Sandra used $20,000 of the proceeds toward the purchase price of the house, because she believed that she was obligated to complete settlement. Sharon, for herself and on behalf of Justin, sued Sandra, seeking to have a constructive trust imposed on the insurance proceeds. At the time of trial, Sharon had $1,400 of the proceeds remaining in her posses-

sion. We are informed that the constructive trust was sought not only on the $1,400, but on Sandra's home as well, at least up to the amount of the insurance proceeds used in the purchase of the home.[1]

Both Sharon and Sandra receive Social Security benefits by reason of Gary's death. Sharon receives $605/month; Sandra receives, for herself, $326/month and another $580/month for her son. The evidence established that Gary's estate was insolvent, having only $500 in assets and creditors' claims far exceeding that amount. Sharon testified that she did not file a claim against the estate because of the insolvency. She also acknowledged that she had never requested Gary to provide proof of premium payment.

Sandra argued that a constructive trust was not warranted because she had not been unjustly enriched by the proceeds. This was apparently based, at least in part, on the claim that she had lent Gary certain sums that had not been repaid and that, in addition, she had been obliged to pay certain debts of Gary. The agreed statement of the case does not indicate the amounts in either category.

In refusing to impose a constructive trust, the court stated:

"By accepting the insurance money from State Farm after her husband's suicide, [Sandra] breached no duty to anyone, therefore, the retention of that sum and the use of that money to secure the purchase of real estate was not wrongful. Accordingly, imposing a constructive trust upon [Sandra's] home, the remaining money or other acquisition derived from the insurance payment would be contrary to the existing law of our State."

---

1. Because this is an expedited appeal, the record consists only of the Agreed Statement of Case filed by the parties. *See* Md. Rules 8–207 and 8–413(b). The text of the complaint is not included in the Agreed Statement. The omission is not a problem in this case, as the parties agreed at oral argument that the constructive trust was intended to be co-extensive with the full proceeds of the policy.

### DISCUSSION

██ As both parties acknowledge, the appellate courts of Maryland have not yet had occasion to rule on the general question presented here—whether, when a person undertakes a contractual obligation to maintain life insurance for the benefit of a designated person and then, in derogation of that obligation, changes the beneficiary of the policy, the court may properly impose a constructive trust upon the proceeds of the policy in the hands of the substituted beneficiary, even in the absence of any evidence of wrongdoing by that substituted beneficiary.

In *Wimmer v. Wimmer,* 287 Md. 663, 414 A.2d 1254 (1980), the Court, though declining to find a constructive trust appropriate in that case, described the purpose of such a trust. At 668, 414 A.2d 1254, it said:

"A constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property. The remedy is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, *or where circumstances render it inequitable for the party holding the title to retain it.* [citations omitted.] The purpose of the remedy is to prevent the unjust enrichment of the holder of the property."

(Emphasis added.)

The Court made clear that the remedy was not to be used to "right every wrong." It observed that, in the earlier cases in which it had approved the imposition of a constructive trust, there had been some transaction in which "the alleged wrongdoer has acquired property in violation of some agreement or in which another person had some good equitable claim of entitlement to property resulting from the expenditure of funds or other detrimental reliance resulting in unjust enrichment," and it concluded that "in most cases, unless there is an acquisition of property in which another has some good equitable claim, no constructive trust may be imposed." *Id.* at 671,

414 A.2d 1254. *See also Brown v. Coleman*, 318 Md. 56, 566 A.2d 1091 (1989).

■ Although *Wimmer* makes clear that a constructive trust is an extraordinary remedy, to be afforded only in limited circumstances, it does confirm that imposition of such a trust is not necessarily dependent on a finding that the person whose property is subjected to it has committed some impropriety, but may rest as well upon a finding of unjust enrichment arising from other circumstances that "render it inequitable for the party holding the title to retain it." *Id.* at 668, 414 A.2d 1254.

As Sharon points out, courts in other States have addressed the issue raised here, and nearly all of them have concluded that imposition of a constructive trust is a proper means of enforcing agreements to maintain insurance for designated beneficiaries. Perhaps the clearest and most succinct expression of this view is the holding of the New York Court of Appeals in *Markwica v. Davis*, 64 N.Y.2d 38, 484 N.Y.S.2d 522, 523, 473 N.E.2d 750, 751 (1984):

> "Where as an incident of a separation agreement a decedent husband has agreed to continue his children as beneficiaries of a policy of insurance on his life, a constructive trust for their benefit will be impressed on the proceeds of such insurance in the hands of the decedent's second wife to whom they had been paid under a change of beneficiary designation."

*See also Brown v. Brown*, 604 So.2d 365 (Ala.1992); *Perkins v. Stuemke*, 223 Ill.App.3d 839, 166 Ill.Dec. 103, 585 N.E.2d 1125 (1992); *Green v. Green*, 13 Mass.App.Ct. 340, 433 N.E.2d 92 (1982); *Thiebault v. Thiebault*, 421 N.W.2d 747 (Minn.App. 1988); *Herrig v. Herrig*, 199 Mont. 174, 648 P.2d 758 (1982); *Hirsch v. Travelers Ins. Co.*, 134 N.J.Super. 466, 341 A.2d 691 (1975); *Aetna Life Ins. Co. v. Hussey*, 63 Ohio St.3d 640, 590 N.E.2d 724 (1992); *Taylor by Taylor v. Taylor*, 291 S.C. 261, 353 S.E.2d 156 (App.1987); *Wunsche v. Equitable Life Assur. Soc.*, 551 S.W.2d 84 (Tex.Civ.App.1977); *Singer by Cohen v.*

*Jones,* 173 Wis.2d 191, 496 N.W.2d 156 (1992); *Rollins v. Metropolitan Life Ins. Co.,* 912 F.2d 911 (7th Cir.1990).

The Alabama Court, in *Brown v. Brown, supra,* expressly rejected an argument by the second wife, who was the ultimate beneficiary of the policy, that a constructive trust on the proceeds was not permissible because "she was not guilty of fraud, wrongdoing, abuse of confidential relationship, or any other form of unconscionable conduct." *Id.* 604 So.2d at 370. Quoting from an earlier Alabama case (*American Family Care, Inc. v. Irwin,* 571 So.2d 1053, 1058 (Ala.1990)), which, in turn, relied on a number of well-accepted treatises, the Court observed that, while a constructive trust may be imposed to redress that kind of wrongdoing,

"Equity may also impress a constructive trust on property in favor of one beneficially entitled thereto against a person, who, against the rules of equity and good conscience, in any way either has obtained or holds and enjoys legal title to property that in justice that person ought not to hold and enjoy."

604 So.2d at 370.

The rationale for imposing a constructive trust on insurance proceeds in this kind of case was explained by the Illinois Court in *Perkins v. Stuemke, supra,* 223 Ill.App.3d 839, 166 Ill.Dec. 103, 105, 585 N.E.2d 1125, 1127:

"Many cases have dealt with situations similar to the present one, wherein a deceased party to a divorce permitted a life insurance policy to lapse by failing to pay the premiums, or changed the beneficiary to the policy, contrary to the requirements of a marital settlement agreement. [citations omitted.] In such cases, the agreement requiring the insured to maintain a particular beneficiary on a policy gives that beneficiary vested rights in the proceeds of that policy. Accordingly, courts have imposed constructive trusts on the proceeds of the deceased's life insurance because the marital settlement agreement gives the former spouse or children named as beneficiaries in the binding agreement a

superior equitable interest in the life insurance proceeds over later named beneficiaries."

The factual circumstances in these cases often vary. The language of the marital agreement differs, as does the nature of the violation by the decedent. Sometimes, he or she allows the policy to lapse entirely; sometimes the policy is replaced with a new policy having different terms or beneficiaries; sometimes, as here, the policy is maintained but the beneficiary is changed. Because a constructive trust is an equitable remedy, the court must consider all of the relevant circumstances in deciding whether it is an appropriate remedy in a given case. As is the rule generally with respect to equitable remedies, a constructive trust is not a matter of right, *ex debito justitiae,* but rests in the discretion of the court, to be imposed or denied according to the circumstances of the case. *Wimmer* makes that clear.

The immediate problem in the instant case is the court's apparent view that a constructive trust is impermissible because Sandra had done nothing wrong in accepting the insurance proceeds. As we have indicated, however, wrongdoing on Sandra's part is not a necessary precondition. The test is whether, under all the circumstances, it would be inequitable for Sandra to retain the proceeds of the policy, directly or through their conversion to other property; do Sharon and Justin have a sufficiently higher equitable call on those proceeds by virtue of the 1984 marital settlement agreement to permit that call to be enforced through the device of a constructive trust? This is a matter to be considered in the first instance by the circuit court, not by us, so we need to remand the case in order for the court to undertake that examination.

For the guidance of the circuit court, we shall address two arguments made by Sandra in this appeal, as they likely will be presented again. Sandra argues first that, because she has paid a number of Gary's outstanding obligations and had lent money to Gary which was never repaid, she has not been unjustly enriched by the insurance proceeds. As we indicated,

the record before us is unclear as to the amounts involved and the precise nature of the loans and obligations, but, from what Sandra has said, it does not appear that they would have any relevance to the issue of unjust enrichment. That issue relates solely to whether Sandra has received funds to which Sharon and Justin have a paramount equity. Unless Sandra can show that Sharon and Justin have, in some clear way, benefitted from her loans to Gary or her payments of his obligations, we fail to see how such loans or payments would affect the equitable balance.

■ The second argument is more substantial; it emanates from the wording of the 1984 agreement. Paragraph 10 contains four elements: it requires Gary to keep the policy in effect, to be used for Justin's support, maintenance, and education; it provides that the fund shall be administered by Sharon and, if Gary so desired, another party as trustee; it requires Gary to provide Sharon with proof of premium payment; and it makes Gary's estate liable if he failed to comply "with the provisions of this Paragraph."

Gary, of course, complied with the requirement of keeping the policy in effect, and, as a result, whether he provided periodic proof of premium payment to Sharon is not directly relevant.

We do not accept Sandra's contention that the clause subjecting Gary's estate to liability in the event of a violation of the paragraph necessarily constitutes an election by Sharon to look only to the estate and thus to preclude the remedy of a constructive trust on the insurance proceeds. The provision for estate liability would be particularly important if Gary violated the agreement by allowing the policy to lapse, for then there might be no other source of recovery. We do not view that provision as a limiting election of remedies with respect to other violations, however, precluding Sharon from searching for any remedy that might otherwise be available to best meet the particular violation.

If, in the case before us, the estate were solvent, Sharon could look to it in lieu of a constructive trust, and that ability

would be important in assessing the relative equities and determining whether a constructive trust on the insurance proceeds is appropriate. The court might well and properly be reluctant to harm Sandra when doing so would provide no significant benefit to Sharon or Justin. Because the estate is insolvent, however, the option of looking to it for recovery is simply not available.

The language permitting Gary to designate another person as trustee with Sharon needs to be considered by the court. There was evidence that Sandra maintained a good relationship with Justin. The court may consider whether, by changing the primary beneficiary to Sandra but retaining Justin as a contingent, successor beneficiary, Gary intended to have Sandra act as a joint trustee of the fund. We do not suggest that he did, or if he did what kind of judgment should issue, only that it is a matter to be examined.

JUDGMENT VACATED; CASE REMANDED TO CIRCUIT COURT FOR WASHINGTON COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO PAY THE COSTS OF THIS APPEAL.